IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK HARRELLSON, CAROLYN JEAN GROVER, YVONNE ENGLISH, DARREN GRIGGS, AND JOHN MARSHALL<br><br>  Plaintiffs,<br><br>v.<br><br>HAGENS BERMAN SOBOL SHAPIRO LLP AND STEVE W. BERMAN,<br><br>  Defendants. | ) **COMPLAINT**<br>)<br>) Case No.: _____<br>)<br>) Related Case: 2:11-cv-05782 PD |

## INTRODUCTION

1. When is enough, enough? Between 2011 and 2014, defendants filed numerous cases on behalf of plaintiffs who believed they had suffered birth injuries due to in utero exposure to thalidomide, a well-known teratogen. Those cases were consolidated in this Court as *Johnson v. SmithKline Beecham et al.*, Case No. 2:11-cv-05782-PD ("pharmaceutical litigation").

2. 7 years after a Special Discovery Master was appointed to examine the conduct of Hagen Berman Sobol Shapiro ("Hagens Berman") related to various aspects of its representation of the named plaintiffs, the results still aren't in. Plaintiffs' cases have been stayed and they are trapped in litigation limbo. Despite a lifetime of struggle with their birth injuries, and despite being put through the rigors

of discovery, the named plaintiffs still do not know if they will receive compensation for their injuries, or, in fact, if their cases will ever reach resolution.

3. But it is not, as many have been told by their attorneys, because the Special Master and the Judge are abusing their power. It is because their own attorneys have obstructed and frustrated the investigation. And to cap it off, their attorneys submitted sealed information to an expert to produce a report justifying the attorneys' litigation conduct (based, at least in part, on inaccurate testimony), thereby waiving at least some of the privileges that were designed to protect the integrity of the named plaintiffs' underlying cases.

4. After years of litigation, of uncertainty, of stress, of declining health, and of strained relationships, the named plaintiffs are here to say "enough."

5. Each of the named plaintiffs are clients of Hagens Berman during their prosecution of the pharmaceutical litigation. The attorney-client relationships are reflected in retention agreements entered into between the named plaintiffs and the law firm Gordon & Reeves and subsequently through an attorney association agreement with Hagens Berman and/or between the named plaintiffs and Hagens Berman directly. By undertaking the representations, Hagens Berman had fiduciary duties to each of the named plaintiffs.

6.     Defendants have acted to pursue and promote their own interests instead of the interests of the named plaintiffs. In so doing, defendants have breached their fiduciary duties to the named plaintiffs.

## PLAINTIFFS

7.     Plaintiff Mark Harrellson is an individual residing in Rockmart, GA. Harrellson is currently represented by Hagens Berman as a plaintiff in the pharmaceutical litigation.

8.     Plaintiff Carolyn Jean Grover is an individual residing in Fairport, NY. Grover is currently represented by Hagens Berman as a plaintiff in the pharmaceutical litigation.

9.     Plaintiff Yvonne English is an individual residing in Montgomery, AL. English is currently represented by Hagens Berman as a plaintiff in the pharmaceutical litigation.

10.     Plaintiff Darren Griggs is an individual residing in Centralia, MO. Griggs is currently represented by Hagens Berman as a plaintiff in the pharmaceutical litigation.

11.     Plaintiff John Marshall is an individual residing in Lacombe, LA. Marshall is currently represented by Hagens Berman as a plaintiff in the pharmaceutical litigation. In 2014, Hagens Berman attempted to withdraw from representation of Marshall (and others) triggering an investigation of whether

Hagens Berman was or should have been aware of the bases for withdrawal either before, or relatively shortly after, filing suit on his behalf. The Special Master's investigation continues to this day. Hagens Berman's alleged bases for withdrawal with made public in May 2021 due to Hagens Berman's waiver of certain privileges. In the summer of 2020, Marshall received a call from an attorney from Fenwick & West, who represented a different and former plaintiff in the pharmaceutical litigation in connection with the Special Master's investigation. The attorney asked for information about Marshall's desire to waive certain privileges and Marshall informed the attorney that he did not wish to waive privilege. At the end of the phone call, the attorney referenced a settlement of a claim against Hagens Berman, noting that he hoped the settlement would help Marshall move forward with his life. Hagens Berman has not, to date, made formal or informal offers of settlement.

12. Between 2011 and 2014, defendants filed cases seeking damages for each named plaintiffs' birth injuries. Those cases were consolidated at *Johnson v. SmithKline Beecham et al.*, Case No. 2:11-cv-05782-PD.

## DEFENDANTS

13. On information and belief, Defendant Steve W. Berman (Berman) is the founder and managing partner of Hagens Berman Sobol Shapiro LLP and is an attorney in the Seattle office located at 1301 Second Avenue, Suite 2000, Seattle, WA 98101. On further information and belief, Steve W. Berman has had personal

involvement in all significant strategic decisions in the pharmaceutical litigation, including those described herein. Steve Berman may be held personally liable for his participation in any intentional torts.

14. On information and belief, Defendant Hagens Berman Sobol Shapiro LLP is registered as a Washington limited liability partnership with its home offices at 1301 Second Avenue, Suite 2000, Seattle, WA 98101.

## JURISDICTION AND VENUE

15. Jurisdiction is proper under 28 U.S.C. § 1332(a) as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this district and are related to litigation pending in this district: *Johnson v. SmithKline Beecham et al.*, Case No. 2:11-cv-05782-PD ("'pharmaceutical litigation"). Venue is also proper in this district because this Court is familiar with the underlying pharmaceutical litigation and this forum has an interest in regulating the conduct of lawyers and plaintiffs undertaking litigation in this forum. In addition, this district has jurisdiction over all plaintiffs and defendants preventing burdensome fragmentation of the claims among various jurisdictions and enabling resolution that is easier, expeditious, and less expensive than any alternative or collection of alternative forums.

17. This Court has previously found that it has personal jurisdiction over the defendants. Case No. 2:20-cv-02232-pd (E.D. Pa.), Doc. 35.

**Background of the Pharmaceutical Litigation Generally**

18. During litigation related to a fund for thalidomide survivors in Australia, Peter Gordon, the attorney primarily responsible for pursuing the Australian litigation, raised the possibility of pursuing litigation on behalf of victims of thalidomide in the United States. Gordon began working with Kay Gunderson Reeves (Reeves) and formed a U.S.-based law firm, Gordon & Reeves. Gordon & Reeves undertook the initial representation of U.S. thalidomide victims for potential litigation against the pharmaceutical companies responsible for the manufacture and distribution of thalidomide in the United States.

19. Beginning in late 2010, Gordon, Reeves, and Peter Gordon's law firm, Gordon Legal, engaged in communications with the Lanier Law Firm, the Hagens Berman firm, and Steve Berman personally about handling litigation in the United States on behalf of potential thalidomide plaintiffs. The Lanier Law Firm filed a case on behalf of two U.S.-based thalidomide victims in May 2011.

20. On or about August 30, 2011, Hagens Berman entered into a Joint Prosecution Agreement (JPA) with Gordon Legal. Pursuant to the JPA, the purpose of the agreement was to facilitate Gordon Legal's "implementation, institution and maintenance of thalidomide litigation in Australia, USA and UK." The JPA further

noted that Gordon Legal paid Reeves a salary and maintained the Texas law firm Gordon & Reeves "devoted to the institution and maintenance of thalidomide litigation in the USA."

21. If Hagens Berman and Gordon Legal were able to agree on a form complaint for the "Murray action," Hagens Berman would "primarily assume the conduct of the USA litigation," substitute in for the Lanier Law Firm on all thalidomide litigation in the United States, and the Lanier Law Firm would withdraw.

22. The JPA required that Peter Gordon, Steve Berman, and Hagens Berman attorney Nicholas Styant-Browne "personally formulate and determine the strategy, resourcing, and implementation of the litigation." Peter Gordon was required to "make reasonably available to HB all its knowledge base and other resources" with respect to the litigation in the United States.

23. The JPA further allocated responsibility to both "generic" and case-specific costs, split fees recovered among the firms, and further required Hagens Berman to "commit adequate resources to client collection for the litigation, including necessary news media, online promotion and access, and such other media as required."

24. Hagens Berman further agreed to take over paying a salary to Reeves to continue her work on a part-time basis and for a reduced salary at 55% of the rate that she had been paid by Gordon Legal.

25. Both Berman and Reeves knew of and recognized the importance of ensuring that statute of limitations positions were individualized. On October 22, 2011, Berman emailed that including numerous plaintiffs into a single complaint made it "imperative that the counts are tailored by each plaintiff as are sol arguments." In response, Reeves commented that the "discovery facts, such as they are" were individualized. Reeves continued, however, that "all of the plaintiffs have the fraudulent concealment/equitable estoppel argument, which is pled in detail in the template complaint." Reeves further explained this position on October 28, 2011, noting that "[m]uch of our SOL response is client-specific, but much isn't."

26. Defendants were concerned about the viability of thalidomide litigation asserted in the October 2011 complaint after it was removed to Federal Court by the pharmaceutical defendants. In the context of discussing strategy related to remand, Berman wrote that he did not "see a good option here." He continued that losing on "option one" would lead to the thalidomide cases getting "tossed down the line by [Judge D]iamond."

27. On June 19, 2012, Reeves specifically expressed concern to Steve Berman and Nicholas Styant-Browne about whether the statute of limitations would

get a "fair hearing" in Federal Court. On July 12, 2013, Reeves wrote to Nicholas Styant-Browne that she saw "virtually no chance that you will prevail before Judge Diamond."

28. Berman, Reeves, and other Hagens Berman attorneys failed to advise the named thalidomide plaintiffs in this complaint of their view of the likelihood of success in Federal Court before discovery got underway. Indeed, in contrast to the views expressed internally, Steve Berman sent letters to then-current thalidomide plaintiffs relaying an optimistic view of their chances of success in the pharmaceutical litigation.

### Background of the Special Discovery Master's Investigation

29. As the discovery process moved forward, the named defendants failed to provide information requested by the pharmaceutical litigation defendants. The failure to collect and produce information in discovery, led the Court to appoint a Special Master to resolve a variety of contested discovery matters in 2014.

30. As discovery issues were resolved, it became clear that many of the facts alleged in support of Hagens Berman's theory to avoid the statute of limitations, did not comport with the documentary and testimonial evidence. As a result, the named defendants were ordered to analyze the facts underlying each of the pending cases in the pharmaceutical litigation and identify which cases it intended to pursue. That process led to a number of, supposedly, voluntary

dismissals and motions for the defendants to withdraw from representing certain thalidomide plaintiffs.

31. By the fall of 2014, named defendants decided to throw in the towel against the pharmaceutical defendant that had been spearheading the defense of the pharmaceutical litigation. In October 2014 defendants sought the agreement the plaintiffs remaining to dismiss their claims against GlaxoSmithKline (GSK) while continuing to pursue claims against the other pharmaceutical defendants. The letter claimed that the reason for the dismissal was that GSK was not involved in the distribution of thalidomide during the time when their mothers received and ingested thalidomide. The letter also noted that certain sanctions motions had been filed by GSK against Hagens Berman and by Hagens Berman against GSK, and that GSK would withdraw its sanctions request against Hagens Berman in exchange for dismissal.

32. There were numerous problems with the October 2014 letter including that it characterized the sanctions motions that were pending against Hagens Berman as a cross-motion for sanctions, rather than accurately identifying the bases for the respective motions. The letter also failed to provide the context that GSK had been leading the defense of the litigation and that GSK surrendering its ability to recover sanctions against Hagens Berman represented a multi-million-dollar windfall for the law firm while the thalidomide plaintiffs would receive nothing.

33. The October 2014 letter also misleadingly stated that there were "compelling strategic advantages," in the view of Hagens Berman, to dismissing GSK and "continuing against the other defendants."

34. The October 2014 letter was received by named plaintiffs Harrellson, Grover, English, and Griggs and was executed and returned to Hagens Berman.

35. Upon learning that numerous plaintiffs had agreed to dismiss their claims against GSK in exchange for no compensation, this Court assigned the Special Master to investigate whether the requested dismissals were knowing and voluntary. The investigation began in 2015. The Special Discovery Master's investigation continues to this day and has expanded in scope as new information is uncovered.

36. Over the course of the Special Discovery Master's investigation, Hagens Berman has consistently attempted to limit the scope of the investigation and to ensure that information about its misconduct and failure to look out for the interests of its clients was not accessible to either its clients or the public. Steps that Hagens Berman has taken to frustrate and obstruct the investigation include: seeking mandamus to prevent questioning of their clients by the Special Master; otherwise seeking to limit the scope of the Special Master's investigation to narrow and limited issues; seeking to prevent the participation of another client in the Special Master's investigation; procedural motions that have had the effect of prolonging the

investigation; and seeking, to this day, to keep documentary and testimonial evidence about Hagens Berman's misconduct sealed from public view. Notably, despite attempting to keep information sealed and inaccessible to their clients, defendants introduced expert testimony based on the same documents and testimony that defendants have attempted to keep sealed from their own clients.

37. Individually and cumulatively, these actions have extended the length of the Special Master's investigation, trapping the named plaintiffs, whether a direct party to the investigation or not, in limbo, with no way to push their underlying cases forward. In addition, the defendants' obstruction has allowed only small snippets of information to be released and has ensured that defendants' own clients could not uncover the hidden reality of their representations. As much as defendants wrapped their obstruction in the language of protecting their clients, defendants' goal in these obstructive behaviors has been to protect itself.

38. To this day, much of the information uncovered as part of the Special Discovery Master's investigation remains sealed and is unavailable to both defendants' clients and the public. That did not stop defendants from providing that sealed information to an outside expert. In May 2021 the Special Discovery Master found that Hagens Berman had waived certain privileges related to the preparation of that expert report justifying defendants conduct in the "propriety of the filing of, continued prosecution of, and withdrawal from the thalidomide cases at issue." The

expert report was filed on the public docket in May 2021 and is now available for review.

39. The report cites testimony given under oath by "Managing Partner Steve Berman" that Hagens Berman attorneys "vetted statute of limitations as part of the intake process" and that "the very first thing Hagens Berman did when taking over these cases was research statute of limitations issues and prepare comprehensive memoranda on the topic." Berman's testimony was inaccurate. Statute of limitations were not "vetted" in any meaningful way as part of the intake process, at least not consistently. In addition, Hagens Berman did not prepare "comprehensive memoranda" on statute of limitations issues shortly after taking over the thalidomide cases, deferring meaningful analysis for years, and only after certain named plaintiffs were subjected to the discovery process. And even then, the analysis was partial, incomplete, and largely irrelevant.

40. On information and belief, Hagens Berman's fundamentally failed to investigate the scientific facts and legal issues and further failed to perform any analysis linking those scientific facts and legal issues to individual claims. Preventing disclosure of that hidden reality is why the named defendants have been so diligent at attempting to obstruct the Special Master's investigation. It is also the reason that Hagens Berman has only provided partial and incomplete information about the Special Master's investigation to its own clients.

41. Indeed, it is only in the last few months that Hagens Berman has begun the process of advising their clients about the significance of the Special Master's investigation. In response to a hack of Hagens Berman's attorneys at the Pietragallo law firm and hacker access of certain clients' health information, Hagens Berman took the opportunity to send a letter referencing the Special Master's investigation. That letter begins its summary of the Special Master's investigation as follows: "It is clear [the Special Master] believes your cases have no merit, and we should not have filed them. We disagree and have supported our position with the testimony of one of Pennsylvania's leading ethics experts…." Named plaintiffs Harrellson, Grover, English, and Griggs received substantially similar letters.

42. As the scope of the Special Master's investigation has grown in response to Hagens Berman's misconduct and attempted obstruction, the named plaintiffs are trapped in a years-long limbo with respect to their birth injury claims to their detriment.

## COUNT I: BREACH OF FIDUCIARY DUTY

43. Plaintiffs incorporate paragraphs 1-42 as if fully set forth herein.

44. All defendants acted as counsel for plaintiffs and owed them fiduciary duties of honesty and undivided loyalty.

45. Each of the defendants breached their fiduciary duty of honesty and loyalty by at least:

- Committing resources to "client collection" instead of adequately investigating the scientific and legal bases of the claims brought on behalf of the named plaintiffs;

- Obstructing the investigation of the Special Master in the underlying pharmaceutical litigation, unreasonably extending the resolution of the named plaintiffs' cases against various pharmaceutical defendants;

- Pursuing and protecting the defendants' financial and reputational interests at the cost of unreasonably extending the underlying pharmaceutical litigation, including by waiving privileges designed and intended to protect the viability of plaintiffs' underlying cases by providing sealed information to an expert for the defendants and serving and by serving a sealed expert report citing inaccurate (and sealed) testimony;

- Failing to disclose the defendants' litigation misconduct and failure to pursue the pharmaceutical litigation diligently and reasonably on behalf of the named plaintiffs;

- Other actions and failures to act or disclose as set forth herein or as may be identified in discovery.

46.     Plaintiffs have been damaged because they acted or failed to act in reliance on the misleading, incomplete, and false information provided by the defendants and/or have remained trapped in litigation limbo.

47.     The defendants' publicity, reputation, and financial interests have been advanced through their breaches of their fiduciary duties to the plaintiff.

48.     Plaintiffs are entitled to recover for any damages to their mental, physical, and financial health and the unjust and inequitable benefit received by each of the defendants as a result of their breaches of fiduciary duty.

49.     The acts or failures to act or disclose was done knowingly, intentionally, willfully, and/or maliciously and with the knowledge and intent that plaintiffs would rely on it.

## PRAYER FOR RELIEF

Plaintiffs prays for relief as follows:

1. past, present, and future economic damages in connection with defendants' breaches of fiduciary duty;
2. compensatory damages, according to proof, including damages for pain and suffering, mental anguish, emotional distress, embarrassment, shame, anguish, anxiety, and loss of enjoyment of life, along with past, present, and future special damages;

3. general damages in the amount to be determined for the wrongful conduct of the defendants;

4. equitable relief including at least the disgorgement or restitution to plaintiffs of all benefits or prospective benefits received by the defendants as a result of their breaches of fiduciary duty;

5. reasonable costs, including any attorneys' fees permitted by law;

6. prejudgment and post-judgment interest as provided by law;

7. punitive damages based on the character of the acts and omissions of the defendants, the nature and extent of the harm, and the wealth of the defendants; and

8. such further relief as allowed by law.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims set forth herein.

Dated:  November 24, 2021              Respectfully submitted,

_____
Nicholas S. Boebel (*pro hac vice* to be filed)
**Hansen Reynolds LLC**
225 South Sixth Street, Suite 3900
Minneapolis, MN 55402
Telephone: (206) 268-9320
nboebel@hansenreynolds.com

*/s/Matthew Weisberg*
**Weisberg Law**
7 S. Morton Ave.
Morton, PA 19070

Telephone: (610) 690-0801
mweisberg@weisberglawoffices.com